Michael R. Bracamontes (SBN 242655)
Ryan J. Vlasak (SBN 241581)
Kristen M. Ross (SBN 250917)
BRACAMONTES & VLASAK, P.C.
220 Montgomery Street, Suite 870
San Francisco, CA 94104
Phone: (415) 835-6777
Fax:    (415) 835-6780

Attorneys for Plaintiff Gabrielle Rodriguez

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| GABRIELLE RODRIGUEZ,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF FRESNO, ROBERT CHAVEZ and<br><br>DOES 1 to 20, inclusive,<br><br>                    Defendants. | **CASE NO.:**  1:09-CV-01176-AWI-MJS<br><br>**PLAINTIFF GABRIELLE RODRIGUEZ'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE:**     February 28, 2011<br>**TIME:**     1:30 p.m.<br>**DEPT.:**    Two<br>**JUDGE:**  Hon. Anthony W. Ishii<br><br>**ACTION FILED**: June 16, 2009<br>**TRIAL DATE**:    March 29, 2011 |

/// 

///

- i -

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

# TABLE OF CONTENTS

Memorandum of Points and Authorities ............................................................................. 1

Introduction ........................................................................................................................ 1

Statement of Facts .............................................................................................................. 1

Argument ............................................................................................................................ 8

I.   DEFENDANTS INTENTIONALLY SHOT MS. RODRIGUEZ AND AS SUCH, HER
     CLAIMS SHOULD BE ANALYZED UNDER THE REASONABLENESS STANDARD
     SET FORTH UNDER THE FOURTH AMENDMENT. .............................................. 8

     A.   Standard for Summary Judgment. ............................................................... 8

     B.   Intentional Shooting – Fourth Amendment Analysis .................................. 9

     C.   A Seizure Occurred Within the Meaning of the Fourth Amendment. ....... 12

     D.   Defendant Chavez is Not Entitled to Qualified Immunity. ...................... 13

II.  A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS
     VIOLATED MS. RODRIGUEZ'S FOURTEENTH AMENDMENT RIGHT TO DUE
     PROCESS WHEN THEY SHOT HER WITH A PURPOSE TO HARM UNRELATED TO
     LEGITIMATE LAW ENFORCEMENT OBJECTIVES ............................................ 14

III. DEFENDANT CITY OF FRESNO IS LIABLE UNDER SECTION 1983 FOR
     MAINTAINING A POLICY OR CUSTOM OF DELIBERATE INDIFFERENCE TO THE
     RIGHTS OF CITIZENS ...................................................................................... 16

IV.  A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS
     WERE NEGLIGENT. ........................................................................................ 18

V.   A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS
     ARE LIABLE FOR BATTERY ............................................................................ 19

Conclusion ....................................................................................................................... 20

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

## TABLE OF AUTHORITIES

**Federal Cases**

City of Canton, Ohio v. Harris,
  489 U.S. 378 (1989).................................................................................................17

County of Sacramento v. Lewis,
  523 U.S. 833 (1998).................................................................................................14

Davis v. Township of Hillside,
  190 F.3d 167 (3d Cir. 1999)...............................................................................12, 14

Espinosa v. City and County of San Francisco,
  598 F.3d 528 (9th Cir. 2010). ............................................................................9, 11

F.C., III v. County of Los Angeles,
  2010 WL 5157339 (C.D. Cal. 2010)...........................................................14, 15, 16

Graham v. Connor,
  490 U.S. 386 (1989)..........................................................................................9, 10, 14

Henry v. County of Shasta,
  132 F.3d 512 (9th Cir. 1997). ...................................................................................17

Matsushita Elec. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)....................................................................................................8

Monell v. Department of Social Services of City of New York,
  436 U.S. 658 (1978)..................................................................................................17

Moreland v. Las Vegas Metropolitan Police Department,
  159 F.3d 365 (9th Cir. 1998). .............................................................................12, 16

Nelson v. City of Davis,
  709 F. Supp. 2d 978 (E.D. Cal. 2010)......................................................................12

Pearson v. Callahan,
  129 S. Ct. 808 (2009)................................................................................................13

Porter v. Osborn,
  546 F.3d 1131 (9th Cir. 2008). .................................................................................14

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

Case 1:09-cv-01176-AWI-MJS   Document 85   Filed 02/14/11   Page 4 of 25


Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

Price v. Sery,

    513 F.3d 962 (9th Cir. 2008). ........................................................................9

Russo v. City of Cincinnati,

    953 F.2d 1036 (6th Cir. 1992). .....................................................................18

Santos v. Gates,

    287 F.3d 846 (9th Cir. 2002). ........................................................................9

Saucier v. Katz,

    533 U.S. 194 (2001) (overruled on other grounds)............................13, 14

T.W. Elec. Service v. Pacific Elec. Contractors Ass'n,

    809 F.2d 626 (9th Cir. 1987). ....................................................................9, 11

Tennessee v. Garner,

    471 U.S. 1 (1985).............................................................................................9

Torres v. City of Madera,

    524 F.3d 1053 (9th Cir. 2008). .....................................................................12

Wolff v. McDonnell,

    418 U.S. 539 (1974)......................................................................................14

**Federal Statutes**

Fed. R. Civ. P. 56.................................................................................................8

**California State Cases**

Brown v. Ransweiler,

    171 Cal. App. 4th 516 (2009). .....................................................................19

Lopez v. Surchia,

    112 Cal. App. 2d 314 (1952). ......................................................................19

Munoz v. City of Union City,

    120 Cal. App. 4th 1077 (2004). ...................................................................18

Munoz v. Olin,

    24 Cal. 3d 629 (1979). .................................................................................18

*- iv -*


*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Phillips v. TLC Plumbing,

    172 Cal. App. 4th 1133 (2009). ...................................................................................18

Singer v. Marx,

    144 Cal. App. 2d 637, (1956). ...................................................................................19

**California State Statutes**

Cal Civ. Code § 1714 (West 2011)...............................................................................19

Cal. Civ. Code § 1708 (West 2011)...............................................................................18

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendants misconstrue Ms. Rodriguez's theory of the case and erroneously claim she was accidentally shot. Ms. Rodriguez was intentionally shot by Defendant Chavez during the course and scope of his duties as a Fresno police officer. As more fully described below, Ms. Rodriguez was positioned in the line of fire between Defendant Chavez and Danny Hernandez. Defendant Chavez unreasonably perceived a threat from Danny Hernandez. Defendant Chavez perceived a threat even though Danny Hernandez was running away from Defendant Chavez, never looked back at Defendant Chavez, and never reached for his waist band. Put differently, Danny Hernandez was simply running away from Defendant Chavez.

Defendant Chavez's anxiety and poor judgment caused him to discharge his weapon. At the time Defendant Chavez discharged his firearm, he could plainly see Ms. Rodriguez standing less than 10 feet in front of him and decided to shoot both her and Danny Hernandez in order to neutralize an imagined threat. Because of where Ms. Rodriguez was positioned, Defendant Chavez knew he would have to shoot her if he wanted to hit Danny Hernandez, and ultimately decided to intentionally shoot Ms. Rodriguez. As such, Ms. Rodriguez has evidence sufficient to create a triable issue of material fact on all of her claims and Defendants' Motion for Summary Judgment should be denied in its entirety.

This Opposition is based on the enclosed Memorandum of Points and Authorities, the supporting declarations, Plaintiff's Disputed Material Facts, all papers and records on file herein, any requests for judicial notice, any supplemental pleadings or exhibits submitted in support of said motion, and such evidence, both oral and documentary, as may be presented at the hearing of the motion.

### STATEMENT OF FACTS

**Factual Background**

On January 1, 2009, Plaintiff Gabrielle Rodriguez ("Ms. Rodriguez") was attending a New Year's Eve party at the real property located at 964 E. Princeton Ave., Apt. A, Fresno, California (the "Subject Premises") with her boyfriend, Danny Hernandez ("Danny"). (Plaintiff's Additional Disputed Material Fact ("ADF") No. 1.)

///

- 1 -

**Argument Prior to Police Arrival**

Danny and Michael Hernandez ("Michael") got into an argument on the night in question.[1]  (ADF 2.)  Although Michael and Danny have the same last name, they are of no relation.  (ADF 3.)  Danny did not threaten to kill Michael or anyone else at the party.  (ADF 4.)

**Police On-Scene**

Sometime after midnight, Danny walked outside the Subject Premises.  (ADF 5.)  While outside the Subject Premises, Danny heard a noise, which caused him to inspect the area near the gate.  (ADF 6.)  Danny was startled by a gun and light pointed at his head.  (Id.)

The men, who were later discovered to be City of Fresno Police Officers, failed to identify themselves, and carried guns with flashlights attached below the barrel of the gun.  (ADF 7.)  At least one of the men had their flashlight on and was shining it in Danny's face.  (ADF 8.)  As such, Danny could not see any people standing in front of him and only saw a gun and a flashlight.  (ADF 9.)  Accordingly, Danny fled into the Subject Premises for safety.  (ADF 10.)  Danny was not carrying a weapon and did not otherwise pose a threat to the City of Fresno Police Officers or any other persons.  (ADF 11.)

**No Verbal Commands Given**

Marcelino Rodriguez ("Marcelino"), the reporting party, had dialed 911 and was on the phone with dispatch at the time the police officers arrived at the Subject Premises.[2]  (ADF 12.)  Marcelino was standing approximately 10 to 20 feet from the front door of the Subject Premises when he was on the phone with the 911 dispatcher.  (ADF 13.)  Prior to confronting Danny Hernandez, Defendant Chavez heard Danny say, "Bap, bap, bap, bap, bap," as Danny was exiting the Subject Premises.  (ADF 14.)  A male voice saying "Bap, bap, bap, bap, bap," is clearly audible on the 911 recording.  (ADF 15.)

After Danny exits the Subject Premises, he walks toward the gate, opens the gate, and is then confronted by Defendant Chavez.  (ADF 16.)  According to Defendant Chavez, he identifies himself as the Fresno Police Department.  (ADF 17.)  However, contrary to Defendant Chavez's testimony, one

---

[1]  Because there are multiple parties with the last name Hernandez, declarants with the last name Hernandez will be referred to by their first name.  No disrespect is intended.

[2]  Because there are multiple parties with the last name Rodriguez, declarants with the last name Rodriguez, except for the Plaintiff, will be referred to by their first name.

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

cannot hear anybody identify themselves as Fresno police on the 911 recording.  (ADF 15.)  The 911

recording lasts up until the time that Defendant Chavez fires two shots, as Marcelino can be heard

stating, "I hear shots fired."  (Id.)

Defendant Chavez claimed to have identified himself very loudly.  (ADF 18.)  Defendant Chavez

estimated that one could have heard him identify himself as Fresno police from about 100 yards away.

(Id.)  In explaining why he generally identifies himself as loud as possible, Defendant Chavez testified:

> When I order suspects, I use as loud as I can, because I want him to hear and I want anybody
> else in the area to hear.  Because if somebody is saying, Oh, he didn't give a command, he
> didn't identify himself, or as in this case, the suspect is trying to say that I didn't identify
> myself and he didn't know it was me, part of the  neighborhood down the street can say, Hey,
> I heard that officer say Fresno PD.

(ADF 19.)  Defendant Chavez also said that he identified himself as Fresno Police Department "way

louder" than Danny was saying "bap, bap, bap . . . ."  (ADF 20.)  Despite Defendant Chavez's claims,

it is clear that he does not identify himself as a police officer when he confronts Danny because the

audio tape establishes that no one said "Fresno Police Department" prior to the shooting.  (ADF 15.)

Sergeant Larry Bowlan ("Bowlan") arrived on-scene shortly after the call went out.  (ADF 21.)

After exiting his vehicle, from approximately 50-60 yards away, Bowlan heard Defendant Chavez yell

"stop."  (ADF 22.)  Immediately, thereafter Bowlan heard movement, but no other verbal commands.

(ADF 23.)  One to two seconds after that, Bowlan heard two shots fired.  (ADF 24.)  At no time prior

to the shooting did Bowlan hear Defendant Chavez say "stop police."  (ADF 25.)

**Danny Runs From Gate and Attempts to Close Door to Subject Premises**

Having only seen a gun and light, Danny ran from Defendant Chavez and attempted to close the

door to the Subject Premises.  (ADF 26.)  Defendant Chavez was facing Danny and assumed Danny

was pushing on the door with two hands.  (ADF 27.)  Defendant Chavez then kicked the door open.

(ADF 28.)

**Running Into The Subject Premises**

Having failed to identify himself, Defendant Chavez forcibly entered the Subject Premises through

the front door absent a warrant.  (ADF 15, 28.)  Up to this point, Defendant Chavez had multiple

occasions to observe Danny and determine whether he had a firearm on his person.  As Danny exited

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

the Subject Premises, Defendant Chavez was only 10 feet away and did not see any weapons on Danny's person.  (ADF 29.)  After Danny came out of the Subject Premises, he stopped on the cement before opening the gate.  (ADF 30.)  When Danny opened the gate, he was only five feet away from Defendant Chavez and Officer Avila.  (ADF 31.)  Officer Avila saw no weapons on Danny's person at that time.  (ADF 32.)  "Officer Chavez stated that he had not seen the suspect [Danny] with the firearm."  (ADF 33.)  Defendant Chavez did not see the gun in Danny's waistband prior to shooting him, nor did Defendant Chavez see a gun in Danny's hand prior to shooting him.  (ADF 34.)

Although Defendant Chavez, said he identified himself upon entering the Subject Premises, his partner, Officer Avila, stated he did not hear any such remarks.  (ADF 35.)

Ms. Rodriguez was in the house at the time Defendant Chavez ran into her home with his gun drawn.  (ADF 36.)  Ms. Rodriguez was simply standing in the house when the officers entered the home.  (ADF 37.)  Ms. Rodriguez did not have any weapons on her person at the time she was shot.  (ADF 38.)  As Danny began running toward Ms. Rodriguez, she reached out to touch Danny's shoulder.  (ADF 39.)  No verbal warnings were given by Defendant Chavez prior to discharging his firearm.  (ADF 40.)

**Intentional Shooting of Ms. Rodriguez**

Without provocation, Defendant Chavez intentionally fired two rounds and shot Ms. Rodriguez and Danny.  (ADF 41.)  Danny was struck in the back while Ms. Rodriguez was struck in the vagina.  (ADF 42.)  Defendant Chavez was a mere 10 feet away from Ms. Rodriguez when he fired at her and Danny.  (ADF 43.)  Danny was running away from Defendant Chavez and at no time did Danny look back at Defendant Chavez or reach toward his waistband.  (ADF 44.)  Immediately prior to Defendant Chavez shooting Danny, Danny was looking away from Defendant Chavez.  (ADF 45 (Q: What area of the body were you aiming for when you shot Danny?  A: Center mass.  Q: Chest or back?  A: "If he's looking away from me, I can only shoot him in the back.").)  Defendant Chavez could not see Danny's chest at the time he shot him and Ms. Rodriguez.  (ADF 46.)  Defendant Chavez could see the entirety of Danny's back at the time he fired his gun.  (ADF 47.)

Defendant Chavez saw multiple subjects in the short time that he entered the Subject Premises and fired his weapon.  (ADF 48.)  Defendant Chavez took two or three steps from the doorway to the

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

middle of the Subject Premises.  (ADF 49.)  In this short period of time during which Defendant Chavez is running these two or three steps into the Subject Premises chasing Danny, he is apparently able to discern, "two males who in that short period of time looked like Bulldog gang members to me standing in the kitchen [and] a female off to the right out of the sight picture standing by a chest of drawers.  And . . . one person sitting on a couch . . . ."  (ADF 50.)[3]

Defendant Chavez stated the other people in the Subject Premises looked like gang members based on "their general appearance."  (ADF 51.)  When pressed exactly what "general appearance" meant, the first thing out of Defendant Chavez's mouth was "Hispanic male."  (ADF 52.)  According to Defendant Chavez, Ms. Rodriguez grabbed Danny and came into his sight picture, at which time she was also struck by gunfire.  (ADF 53.)  Contrary to Defendant Chavez' assertion, however Ms. Rodriguez was not 5 feet away from Danny.  Defendant Chavez testified that "had [Ms. Rodriguez] not pulled herself into the way, she would not have been struck."  (ADF 54.)  According to Defendant Chavez, "the only reason [Ms. Rodriguez] was injured were due to her own actions."  (ADF 55.)  (ADF 88.)  In other words, upon entering the Subject Premises, within a few seconds, Defendant Chavez made a snap judgment that he was surrounded by gang members and saw Ms. Rodriguez both standing by a dresser and ultimately pulling herself into the way of a bullet.  (ADF 56.)  Defendant Chavez did in fact see Ms. Rodriguez touching Danny at the time he decided to shoot, and fired his weapon at both of them in order to neutralize a perceived threat that was actually nonexistent.  (ADF 46-50, 53-56.)

**Neither Danny nor Ms. Rodriguez Posed a Threat to Defendant Chavez**

Defendant Chavez admits that Ms. Rodriguez was an "innocent person" as defined by Fresno Police Department procedures.  (ADF 57.)  Defendant Chavez also admits that Ms. Rodriguez did not pose a threat.  (ADF 58.)

Danny never turned his head to see who was chasing him.  (ADF 59.)  Danny's arms were swinging in a manner consistent with jogging and he did not drop his hands to his waistband as alleged by Defendant Chavez.  (ADF 60.)  At no time prior to discharging his weapon did Officer Chavez give Ms. Rodriguez any verbal commands or warnings that he was about to discharge his firearm.  (ADF

---

[3] Defendant Chavez defined "sight picture" as bringing your gun up in a manner ready to fire and actually having something in your sights.  (ADF 86.)

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

40.)  At no time prior to Officer Chavez discharging his weapon did Danny threaten the officers, or anyone else, with a weapon or otherwise. (ADF 44-45, 60.)  Both police officers have admitted they never saw Danny with a firearm prior to Officer Chavez discharging his firearm and striking Ms. Rodriguez.  (ADF 61.)

Danny, who did not have any firearm in his possession at the time he was shot in the back, was nonetheless subsequently arrested for possession of a firearm and unlawfully detained pursuant to an illegal search and seizure.  (ADF 62.)

As a result of Defendants acts and/or omissions, Ms. Rodriguez was hospitalized for one week and was forced to endure two surgeries to repair the tissue damage.  (ADF 63.)  After her surgeries, Ms. Rodriguez experienced substantial pain and was limited in her ability to perform everyday functions, including walking and lifting.  (ADF 64.)  As a result, Ms. Rodriguez was unable to work for one month and suffered lost wages therefrom.  (Id.)  Aside from her physical injuries, Ms. Rodriguez also suffers from severe emotional distress, including depression, anxiety, worry, and fear.  (ADF 65.)

**Gun Recovered at the Scene & Marcelino Retracts Statement**

A gun was recovered at the scene of the shooting.  (ADF 66.)  Neither the gun nor the ammunition belonged to Danny.  (ADF 67.)  A fingerprint test was performed on the gun recovered at the scene. (ADF 68.)  The fingerprints were compared with Danny's "with negative results."  (Id.)  The box of ammunition was also dusted for fingerprints "with negative results."  (ADF 69.)

Marcelino also retracted his statement about Danny firing a gun on the night of the incident.  (ADF 87.)  Danny did not fire the gun at midnight as previously reported by Marcelino.  (Id.)  Marcelino had just woken up from a nap when the police questioned him.  (Id.)  Marcelino was confused and disoriented.  (Id.)  Danny did not fire a gun on the night in question.  (Id.)

**Officer Avila's Prior Inconsistent Statement**

Officer Avila gave a statement to Detective Marcus Gray on the night of the incident, a mere three hours after the shooting.  (ADF 70.)  Officer Avila testified that the statement given to Detective Gray was true, complete, and accurate.  (ADF 71.)  In his statement to Detective Gray, Officer Avila specifically stated that he did not see what Danny was doing immediately prior to Defendant Chavez discharging his firearm.  (ADF 72 ("I asked Officer Avila if he saw the gestures or actions of the

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

suspect prior to Officer Chavez shooting the suspect.  Officer Avila stated 'no I did not see what the suspect was doing.  Officer Chavez is a very big stout officer and when the shots were fired I was behind him and I could not see beyond him because of his size.'")).)  In direct contradiction to his deposition testimony and the statement he gave to Detective Gray, Officer Avila claims in his declaration in support of Defendants' Motion for Summary Judgment, that after the door was kicked open, he saw Danny rotate toward his left waist area.  (ADF 73.)  During his deposition, Officer Avila testified that Danny may have reached for his waistband <u>after</u> Defendant Chavez shot Danny in the back.  (ADF 74.)

**Police Chief Andrew Hall's (Ret.) Assessment**

Plaintiff's expert, Andrew Hall ("Chief Hall") was chief of police for the City of Westminster in Southern California.  (ADF 75.)  The Westminster Police Department had over 100 police officers at its peak.  (ADF 76.)  Chief Hall testified that it was not necessarily reasonable for Defendant Chavez to assume that Danny was in possession of a firearm at the time of the shooting.  (ADF 77.)  The reasons being that Defendant Chavez had several opportunities to observe Danny prior to shooting him in the back.  (<u>Id.</u>)  Defendant Chavez saw Danny: 1) when Danny walked out of the house; 2) to the time he walked over to the gate; 3) during the confrontation at the gate; 4) while chasing Danny to the house; and 5) when Danny turned to close the door.  (<u>Id.</u>)

Chief Hall also found it significant that Defendant Chavez could only see Danny's back at the time he fired the first shot.  (ADF 78.)  Ultimately, however, the question of whether a reasonable amount of force was used turns on the question of whether Danny was simply running away from Defendant Chavez or whether Danny reached toward his waistband and turned toward Defendant Chavez.  (ADF 79.)  If Danny was simply running away, the use of deadly force would be unreasonable because Danny would not have posed an imminent threat of serious bodily injury or death to Defendant Chavez.  (<u>Id.</u>)

**The Fresno Police Department's Failure to Train**

Defendants' police practices expert stated he would be surprised if there was one Fresno police officer that was completely unaware of departmental consequences for the improper use of force.  (ADF 80 ("I'd still be surprised if you found me a Fresno police office . . . that hasn't got some

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

awareness that if you do the wrong thing you're going to be censured.").)  Here, Defendant Chavez stated that he did not have any idea about the disciplinary consequences of improperly applying deadly force.  (ADF 81.)  Mr. Callanan went on to conclude that if such an officer existed, and one assumed that departmental policies are communicated and mandated to him, then there would have to exist some failing on the departmental level.  (ADF 82.)

In addition to being completely unaware of disciplinary consequences for the improper use of deadly force, Defendant Chavez was unable to recall what was covered in many of his Use of Force Training classes and updates.  (ADF 83.)  When Defendant Chavez was asked about a Use of Force Update training he took on December 8, 2008, less than 30 days before the shooting at-issue, Defendant Chavez could not recall what was covered during the training.  (ADF 84.)

**Other Complaints of Excessive Force Against the Fresno Police Department**

A number of plaintiffs have sued Defendant City of Fresno for excessive force in connection with shootings by its officers.  (Pl.'s Req. Judicial Notice "RJN" 2-4.)  Additionally, the United States recently indicted several Fresno officers for excessive force.  (Pl.'s RJN 1.)

## ARGUMENT

**I. DEFENDANTS INTENTIONALLY SHOT MS. RODRIGUEZ AND AS SUCH, HER CLAIMS SHOULD BE ANALYZED UNDER THE REASONABLENESS STANDARD SET FORTH UNDER THE FOURTH AMENDMENT.**

**A. Standard for Summary Judgment.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The burden for summary judgment initially lies with the moving party.  Id. at 330.  "[T]he moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  Id. at 331.  However, all evidence must be viewed in a light most favorable to the nonmoving party.  Matsushita Elec. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Service v. Pacific Elec. Contractors Ass'n, 809

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

1  F.2d 626, 631 (9th Cir. 1987).

2  **B.  Intentional Shooting – Fourth Amendment Analysis.**

3  Defendants misconstrue Ms. Rodriguez's theory of the case and erroneously claim she was
4  accidentally shot.  (Defs.' Mot. Summ. J. at 8:24-26.)  Contrary to Defendants' arguments, Ms.
5  Rodriguez was intentionally shot by Defendant Chavez during the course and scope of his duties as a
6  Fresno police officer.

7  Excessive force claims against government agents, stemming from an arrest, search, or seizure are
8  properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham v.
9  Connor, 490 U.S. 386, 388 (1989).  Reasonableness "must be judged from the perspective of a
10  reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396.  The
11  question is whether the officer's actions were objectively reasonable.  Id.

12  In looking at the reasonableness of the officer's conduct, one must look to: 1) the type and amount
13  of force used; 2) whether the suspect posed a threat; and 3) whether the suspect was resisting.
14  Espinosa v. City and County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010).  Where the suspect
15  poses no immediate threat to the officer, the use of deadly force is unwarranted.  Tennessee v. Garner,
16  471 U.S. 1, 11 (1985).  Reasonableness "under the Fourth Amendment always depends upon objective
17  factors and not upon sincerity of belief."  Price v. Sery, 513 F.3d 962, 967 (9th Cir. 2008).

18  Summary judgment in excessive force cases should be granted sparingly because they almost
19  always involve disputed facts.  Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  The balancing of
20  the government's interest over that of the individual, and the analysis of the above factors, requires a
21  careful attention to detail of the facts surrounding the application of force in each particular case.  Id.
22  While it is true that not every push or shove is actionable, it is equally true that where some force is
23  justified the actual amount used may be excessive.  Id.

24  Here, Defendant Chavez testified that Ms. Rodriguez posed no threat to him prior to discharging
25  his firearm.  (ADF 58.)  In pursuing Danny into the Subject Premises, Defendant Chavez was keenly
26  aware of his surroundings.  (ADF 46-50, 53-56.)  Defendant Chavez was able to see everyone in the
27  Subject Premises in the few seconds that he took 2-3 steps from the front door to the middle of the
28  living room of the Subject Premises.  (ADF 48-50.)  Defendant Chavez was able to state what type of

*Bracamontes & Vlasak*
A Professional Law Corporation
www.bvlawsf.com

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

clothing certain individuals had on, made a quick judgment that he was surrounded by Hispanic gang members, and saw tattoos on the men in the kitchen. (ADF 48-52.) Most importantly he also saw Ms. Rodriguez. (ADF 50, 53-56.)

Ms. Rodriguez was not only in close proximity to Danny but was actually touching Danny at the time of the shooting. (ADF 53-54.) Ms. Rodriguez wanted Danny to stop arguing with her brother, and when she saw Danny run back into the house, her first instinct was to reach out toward Danny. (ADF 88.) Ms. Rodriguez was unaware there was a police officer chasing Danny since no verbal commands were given. (ADF 40.)

Danny was running away from Defendant Chavez. (ADF 44.) Danny never looked back at Defendant Chavez and never reached for his waistband. (ADF 44-45.) Put differently, Danny did not pose an imminent threat of serious bodily injury or death to Defendant Chavez since he was merely running away from him.

In making these snap judgments about the environment he just entered, Defendant Chavez became fearful that his life was in jeopardy. (ADF 50-52.) Indeed, Defendant Chavez stated that every single night his five year old daughter tells him "don't get dead." (ADF 85.) With this on his mind, Defendant Chavez formed an unreasonable subjective belief that his life was in imminent danger even though no one was pointing a weapon at him, no one was moving toward him, and he had not personally observed any weapons on the suspect he was chasing. (ADF 43-61.)

Because of Defendant Chavez's misperceptions, he formed an unreasonable and incorrect belief that he was in imminent danger of suffering serious bodily harm or death. The standard is "objective reasonableness." Graham, 490 U.S. at 388. A reasonable jury could conclude that given Defendant Chavez's detailed account of all of the people in the Subject Premises, he in fact saw Ms. Rodriguez in his line of sight prior to discharging his firearm. Defendant Chavez chose to fire at both Ms. Rodriguez and Danny because he unreasonably believed he was in a situation where it was either "their lives or mine." In other words, Defendant Chavez's testimony that his sight picture was clear could be discredited by the jury given Ms. Rodriguez's account of where she was standing at the time the bullets were fired. Defendant Chavez also stated that he was only 10 feet away from Danny at the time he discharged his weapon, had previously seen Ms. Rodriguez off to the right, and eventually realized she

had grabbed Danny.  (ADF 43, 50, 53-55.)  A jury could also conclude that Defendant Chavez in fact saw Ms. Rodriguez standing in the path of the bullet but chose to shoot her anyway because that was the only way to neutralize the threat he perceived from Danny—a threat that was actually nonexistent since Danny was simply running away from Defendant Chavez.

Defendant Chavez could not see Danny's chest at the time he shot Danny and Ms. Rodriguez.  (ADF 46.)  Defendant Chavez testified that Danny was looking away from him at the time he shot Danny and Ms. Rodriguez.  (ADF 45.)  Officer Avila testified that Danny may have reached for his waistband only after he was already shot in the back.  (ADF 74.)  The above testimony could lead a reasonable jury to conclude that Danny was only running away from Defendant Chavez and Danny's alleged "reach for his waistband" was actually Danny doubling over after he had been shot in the back.

The facts in this matter are in dispute and could lead a reasonable jury to a variety of different answers.  "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec., 809 F.2d at 631.  A jury could reasonably disbelieve Defendant Chavez's testimony that he did not see Ms. Rodriguez in his line of fire, especially given that he was able to see everyone else in the living room.  Defendant Chavez not only saw Ms. Rodriguez standing in his line of fire but chose to shoot both her and Danny anyways because Defendant Chavez had an unjustified belief that he was in imminent danger of being killed.  Accordingly, the jury could reasonably conclude that the shooting was intentional.

In reviewing the three factors to determine the reasonableness of the force applied: 1) the type and amount of force used; 2) whether the suspect posed a threat; and 3) whether the suspect was resisting, a reasonable jury could find in favor of Ms. Rodriguez.  See Espinosa, 598 F.3d at 537.  It is undisputed that Ms. Rodriguez herself did not pose a threat.  Deadly force was applied to Ms. Rodriguez. Additionally, there is no evidence that Ms. Rodriguez was given any verbal commands or even had the opportunity to resist Defendant Chavez.  It is a question for the jury to determine the credibility of the witnesses and the weight that should be given to each party's version of events.

Since all inferences should be resolved in favor of Plaintiff, the Court should deny Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim on the grounds that a

- 11 -

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

reasonable jury could find the shooting was intentional and the amount of force applied was unreasonable.

**C. A Seizure Occurred Within the Meaning of the Fourth Amendment.**

"A seizure is a 'governmental termination of freedom of movement through means intentionally applied.'" <u>Torres v. City of Madera</u>, 524 F.3d 1053, 1055 (9th Cir. 2008). Rather than being an innocent bystander case, this matter is more akin to the facts in <u>Nelson v. City of Davis</u>, 709 F. Supp. 2d 978 (E.D. Cal. 2010), where police intentionally shot a pepperspray bullet into a crowd of college protesters and seriously injured one student. On the first question of whether the firing of a pepperspray bullet into a crowd constituted a seizure, as defined by the Fourth Amendment, the court answered in the affirmative. "[T]he proper inquiry must be whether any rational trier of fact could conclude that Plaintiff was an intended object of the police action." <u>Nelson</u>, 709 F. Supp. 2d at 985. In <u>Nelson</u>, there was contradictory evidence as to whether the plaintiff was in the group of students that was targeted by the police. <u>Id.</u> If the plaintiff was in the group of students targeted by the police, as he alleged, then the so-called "innocent bystander" line of cases would be inapplicable. <u>Id.</u>

<u>Moreland v. Las Vegas Metropolitan Police Department</u>, 159 F.3d 365 (9th Cir. 1998) is one of the bystander cases referenced above. In <u>Moreland</u>, officers were responding to a gunfight in a parking lot outside of a bar where the lives of "50 to 100 people who were trapped in the parking lot" were being threatened. <u>Id.</u> at 372. The plaintiffs contended that the officers inadvertently shot and killed a bystander, thereby depriving plaintiffs of their substantive due process rights to family association. <u>Id.</u> at 373. The Ninth Circuit granted defendants' motion for summary judgment because the plaintiff did not allege any intentional conduct on the part of the officers and thus there was no evidence that defendants had the requisite purpose to harm the bystander. <u>Id.</u> In other words, the plaintiffs did not contend that the officers intended to harm the decedent, nor did they dispute that the officers were "entitled to use deadly force to halt the gunfight." <u>Id.</u> That is not the case here.

As stated above, there is ample evidence to conclude that Defendant Chavez intentionally shot both Ms. Rodriguez and Danny in a misguided attempt to neutralize a perceived threat. Defendant Chavez saw Ms. Rodriguez in the line of fire, intended to hit Ms. Rodriguez, and did so because that was the only way he was going to neutralize the perceived threat by Danny—which was objectively

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

unreasonable since Danny was running away and did not reach for his waistband.  Since Plaintiff has alleged an intentional application of force that terminated her freedom of movement, she has properly alleged a seizure under the Fourth Amendment and is entitled to have her claim analyzed under same.

**D.  Defendant Chavez is Not Entitled to Qualified Immunity.**

While government law enforcement officers are entitled to qualified immunity from lawsuits arising from the discharge of their duties, the critical question "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  Pearson v. Callahan, 129 S. Ct. 808, 822 (2009).  In other words, it is not a *subjective* belief that the actions taken were reasonable but rather an *objective* determination as to whether the officer's actions were reasonable.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled on other grounds).

In Pearson, the Court expressly stated that lower courts may still follow the Saucier procedure if they so choose.  129 S. Ct. at 821.  The Saucier procedure required courts to first make a determination whether there was an act that established a Constitutional violation and then to examine whether the Constitutional right violated was clearly established at the time of the violation.  533 U.S. at 202.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id. at 201.

For the reasons stated above, Ms. Rodriguez has established that there is a genuine issue as to whether Defendant Chavez intentionally shot her in an attempt to apprehend and neutralize Danny.  Viewing the evidence in a light most favorable to Ms. Rodriguez, a reasonable jury could conclude that Defendant Chavez saw Ms. Rodriguez in the line of fire, intended to hit Ms. Rodriguez, and did so because that was the only way he was going to neutralize the perceived threat presented by Danny— which was objectively unreasonable since Danny was running away and did not reach for his waistband.

If Ms. Rodriguez's version of events is to be believed, which it must on summary judgment, then Defendant Chavez intentionally shot an unarmed woman that posed no threat to him in order to neutralize an imaginary threat.  As to the first prong of the Saucier procedure, there was a Constitutional violation of Ms. Rodriguez's rights.  533 U.S. at 202.  Danny was running away from

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

Defendant Chavez, was unarmed, never looked back toward the officer, and never reached for his waistband.  Despite these objective facts, Defendant Chavez became unreasonably fearful for his life, saw that Ms. Rodriguez was in his line of fire, and decided to shoot both her and Danny to neutralize the "threat."  Given that Defendant Chavez's actions were not objectively reasonable, in that he used an unreasonable amount of force when none was necessary, there was a violation of Ms. Rodriguez's Fourth Amendment rights.

As to the second prong of the <u>Saucier</u> procedure, "there is no doubt that <u>Graham v. Connor</u>, <u>supra</u>, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."  533 U.S. at 201-202.  The right to be free of excessive force and not be shot while unarmed and not posing a threat was clearly established in January 2009 at the time of the shooting in question.  Accordingly, Ms. Rodriguez meets both prongs of the <u>Saucier</u> procedure and Defendant Chavez is not entitled to qualified immunity as a matter of law.

**II.   A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS VIOLATED MS. RODRIGUEZ'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WHEN THEY SHOT HER WITH A PURPOSE TO HARM UNRELATED TO LEGITIMATE LAW ENFORCEMENT OBJECTIVES.**

The "touchstone" of due process pursuant to the Fourteenth Amendment "is protection of the individual against arbitrary action of government.  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998) (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)).  Accordingly, "official conduct that 'shocks the conscience' is cognizable as a due process violation."  <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir. 2008).  An officer's conduct "shocks the conscience" if the officer "acts with a purpose to harm unrelated to legitimate law enforcement objectives."  <u>F.C., III v. County of Los Angeles</u>, 2010 WL 5157339 at *5 (C.D. Cal. 2010); <u>Porter</u>, 546 F.3d at 1140 (officer's shooting shocks the conscience if "his purpose was 'to cause harm unrelated to the legitimate object of arrest'").  "More specifically, 'it is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that shocks the conscience and gives rise to liability under § 1983.'"  <u>Porter</u>, 546 F.3d at 1140 (quoting <u>Davis v. Township of Hillside</u>, 190 F.3d 167, 172 (3d Cir. 1999) (internal quotations omitted)).

In <u>F.C.</u>, the district court denied the defendants' motion for summary judgment after finding that a

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

question of material fact existed as to whether the deputies shot the victim in the back and therefore acted with a purpose to harm unrelated to legitimate law enforcement objective. 2010 WL 5157339 at *6. The deputies in <u>F.C.</u> confronted the victim in a supermarket while investigating a report that the victim was in possession of a handgun in the market. <u>Id.</u> at *1. The deputies contended that after ordering the victim to turn away from them and go to the floor, a scuffle ensued. <u>Id.</u> at *2. The deputies further contended that the victim reached into the pocket of his pant leg and began to remove a handgun, at which point the deputies shot and killed the victim. <u>Id.</u> The plaintiffs (the victim's children) disputed that the victim was reaching for a handgun at the time he was shot. <u>Id.</u> at *5. The plaintiffs presented evidence that the officers never actually saw a handgun on the victim's person before shooting him. <u>Id.</u> at *6. The plaintiffs also presented evidence that the victim was shot in the back as he was attempting to get up from the ground and run from the officers. <u>Id.</u> at *6. In response, the defendant asserted that even if there was a disputed issue of material fact regarding the reasonableness of force used by the officers, the plaintiffs failed to "point to any evidence establishing a purpose to harm other than the mere fact of the shooting." <u>Id.</u> The district court disagreed, holding there was a "question of material fact . . . as to what occurred when decedent was on the ground in the market and the immediate events thereafter." <u>Id.</u> The court further explained that "[c]rediting plaintiffs' version of the incident, as the Court must at the summary judgment stage, the Court concludes that a rational jury could find that [the deputies] acted with a purpose to harm unrelated to legitimate law enforcement objectives if plaintiffs can prove that the deputies shot decedent in the back twice as he turned around to run, and that decedent never reached into his pocket for a weapon." <u>Id.</u>

Here, there is a triable issue of material fact as to whether Defendant Chavez had a purpose to harm Ms. Rodriguez. <u>See id.</u> (rejecting defendant's contention that plaintiff failed to point to evidence "establishing a purpose to harm other than the mere fact of the shooting"). Ms. Rodriguez has presented evidence that when Defendant Chavez fired the two shots, Ms. Rodriguez was immediately next to Mr. Hernandez and was touching his shoulder. Accordingly, contrary to Defendant Chavez's recount, Ms. Rodriguez was in Defendant Chavez's sight picture. Defendant Chavez, in a moment of panic and with the unreasonable belief that his life was in danger, fired two shots toward Mr. Hernandez and Ms. Rodriguez, intending to harm them. Accordingly, a reasonable jury could conclude

- 15 -

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

that Defendant Chavez had a purpose to harm Ms. Rodriguez.

Additionally, a question of material fact exists as to whether Defendant Chavez's use of deadly force was related to a legitimate law enforcement objective.  Ms. Rodriguez has presented evidence that, prior to the shooting, Defendant Chavez never saw a gun on Mr. Hernandez's person.  Ms. Rodriguez has also presented evidence that after Mr. Hernandez entered the apartment, he continued to run away from Defendant Chavez and never turned his body or head toward Defendant Chavez. Further, Ms. Rodriguez has presented evidence that Defendant Chavez shot Mr. Hernandez in the back. Based on said evidence, which must be presumed as true, a reasonable jury could find that Defendant Chavez used excessive force in shooting Mr. Hernandez and Ms. Rodriguez absent any threat of harm and therefore acted without legitimate law enforcement objectives, just as the court held in F.C.  See id.

Further, this case is distinguishable from Moreland, where the court found that the officers did not act with purpose to harm unrelated to a legitimate law enforcement objective when hitting a bystander during a gun fight in a parking lot.  159 F.3d 365, 372.  Here, unlike Moreland, there was no gunfight in progress and no "immediate risk of serious harm or death to the many innocent individuals."  See id. at 372.  As previously discussed, Defendant Chavez never saw a gun on Mr. Hernandez.  Additionally, Mr. Hernandez never reached for his waistband as he was running from Defendant Chavez.  Further, in Moreland, the plaintiffs did not contend that the officers intended to harm the decedent, nor did they dispute that the officers were "entitled to use deadly force to halt the gunfight."  Id. at 373.  Here, Ms. Rodriguez contends that Defendant Chavez "intended to harm" her and that Defendant Chavez was not "entitled to use deadly force."  Accordingly, this case is distinguishable from Moreland as there is a question of material fact as to whether Defendant Chavez had a purpose to harm unrelated to a legitimate law enforcement objective.  See id.

## III. DEFENDANT CITY OF FRESNO IS LIABLE UNDER SECTION 1983 FOR MAINTAINING A POLICY OR CUSTOM OF DELIBERATE INDIFFERENCE TO THE RIGHTS OF CITIZENS.

A public entity defendant is "liable under § 1983 if the unlawful actions of its employees or agents were taken pursuant to that defendant's policies or customs."  Henry v. County of Shasta, 132 F.3d 512,

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

- 16 -

517 (9th Cir. 1997); <u>see also</u> <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978) (public entity liable under section 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible").  Liability against a public entity will be found where a plaintiff establishes "a policy of being deliberately indifferent to the rights" of others.  <u>Henry</u>, 132 F.3d at 517.  A "policy of deliberate indifference to . . . misconduct" may be established by showing a "failure even after being sued to correct a blatantly unconstitutional course of treatment."  <u>Id.</u> at 520.  Further, "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."  <u>Id.</u> at 519.

Here, a triable issue of material fact exists as to whether Defendant City of Fresno has a policy of deliberate indifference to the use of excessive and deadly force.  A number of plaintiffs have sued Defendant City of Fresno for excessive force in connection with shootings by its officers.  (RJN 2-4.) Additionally, the United States recently indicted several Fresno officers for excessive force.  (RJN 1.) Despite these numerous complaints, excessive force by Defendant City of Fresno's officers has continued.  Defendant's failure "even after being sued to correct a blatantly unconstitutional course of treatment" presents a question of material fact as to whether Defendant has a policy of deliberate indifference to misconduct.

Additionally, Defendant City of Fresno is liable under section 1983 for failure to train.  A public entity is liable for inadequate training "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989).  Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights . . . the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  <u>Id.</u> at 390.

Defendants' police practices expert stated he would be surprised if there was one Fresno police officer that was completely unaware of departmental consequences for the improper use of force. (ADF 80 ("I'd still be surprised if you found me a Fresno police office . . . that hasn't got some awareness that if you do the wrong thing you're going to be censured.").)  Here, Defendant Chavez

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

1   stated that he did not have any idea about the disciplinary consequences of improperly applying deadly

2   force.  (ADF 81.)  Mr. Callanan went on to conclude that if such an officer existed, and one assumed

3   that departmental policies are communicated and mandated to him, then there would have to exist some

4   failing on the departmental level.  (ADF 82.)

5       Further, the mere fact that Defendant City of Fresno provides "excessive force" training is not

6   sufficient for it to avoid liability for failure to train.  See Russo v. City of Cincinnati, 953 F.2d 1036,

7   1047 (6th Cir. 1992) (the fact that defendant held a "seven-hour course" entitled "Disturbed-Distressed

8   Persons" was insufficient to shield it from liability where "content and adequacy of that training was in

9   dispute").  Here, Defendant Chavez was unable to recall what was covered in many of his Use of Force

10   Training classes and updates.  (ADF 83.)  Tellingly, when Defendant Chavez was asked about a Use of

11   Force Update training he took on December 8, 2008, less than 30 days before the shooting at-issue,

12   Defendant Chavez could not recall what was covered during the training.  (ADF 84.)  Accordingly,

13   there is a triable issue of fact as to whether the City of Fresno has properly trained its officers and

14   failed to properly discipline their officers based on the other complaints and criminal indictments

15   concerning the use of excessive force.

16   **IV. A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS**

17       **WERE NEGLIGENT.**

18       As Defendants correctly recognize, police officers have a duty "to use reasonable care in deciding

19   to use and in fact using deadly force."  Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1101

20   (2004).  Further, "an officer's lack of due care can give rise to negligence liability for [an] intentional

21   shooting," thereby making both "negligence and intentional tort theories . . . available to a plaintiff."

22   Munoz v. Olin, 24 Cal. 3d 629, 634 (1979). Further, because of Defendant Chavez's negligence,

23   Defendant City of Fresno is vicariously liable to Ms. Rodriguez for negligence.  See City of Union

24   City, 120 Cal. App. 4th at 1110 (city vicariously liable for officer's negligence).

25       The elements of negligence are: 1) legal duty to use reasonable care, 2) breach of duty, 3)

26   proximate cause, and 4) injury to plaintiff.  Phillips v. TLC Plumbing, 172 Cal. App. 4th 1133, 1139

27   (2009).  Every person is bound to abstain from injuring another.  Cal. Civ. Code § 1708 (West 2011).

28   Everyone is responsible for both for their willful acts and those acts that cause injury to another

through want of ordinary care.  Cal Civ. Code § 1714(a) (West 2011).

Here, Defendant Chavez failed to use reasonable care in deciding to use and actually using deadly force.  Defendant Chavez intentionally shot an unarmed woman that posed no threat to him in order to neutralize an imaginary threat.  Danny was running away from Defendant Chavez, was unarmed, never looked back toward the officer, and never reached for his waistband.  Defendant Chavez and the City are therefore liable for Defendant Chavez's negligent assessment of the actual threats present in the circumstances described above and his intentional discharge of his firearm that led to the serious injury of Ms. Rodriguez.

**V. A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANTS ARE LIABLE FOR BATTERY.**

The elements of battery are "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 (2009).  Additionally, in cases against police officers, the plaintiff must prove "that the peace officer's use of force was unreasonable."  Id.

Here, viewing the evidence in a light most favorable to Ms. Rodriguez, a reasonable jury could conclude that Defendant Chavez saw Ms. Rodriguez in the line of fire, intended to hit Ms. Rodriguez, and did so because that was the only way he was going to neutralize the perceived threat presented by Danny—which was objectively unreasonable since Danny was running away from Defendant Chavez, did not look back at the pursuing officer, and did not reach for his waistband.  Ms. Rodriguez certainly did not consent to being shot and she clearly suffered an injury.

In the alternative, Defendants are liable for battery based on transferred intent.  If a "defendant unlawfully aims at one person and hits another he is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act."  Singer v. Marx, 144 Cal. App. 2d 637, 642 (1956) (quoting Lopez v. Surchia, 112 Cal. App. 2d 314, 318 (1952) ("[i]n such circumstances the doctrine of 'transferred intent' renders [the defendant] liable").  In actions against police officers, transferred intent applies if the officer's use of force against the party targeted was not objectively reasonable.  See Brown, 171 Cal. App. 4th at 527 (court may find transferred intent for

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com

battery claim if officer's use of force against intended target was not objectively reasonable).

Assuming arguendo that Ms. Rodriguez was not targeted by Defendant Chavez, a reasonable jury would still be able to find that Defendant Chavez's intent to shoot Danny transferred to Ms. Rodriguez when his bullets inadvertently hit her. Accordingly, Ms. Rodriguez's claims for battery should not be dismissed on summary judgment because there is a triable issue of fact concerning Defendant Chavez's intent to shoot Ms. Rodriguez.

## **CONCLUSION**

There is sufficient evidence for a reasonable jury to conclude that Defendant Chavez intentionally shot Ms. Rodriguez and that the use of deadly force against her was unreasonable. Ms. Rodriguez has presented evidence, such that a reasonable jury could conclude that Defendant Chavez saw Ms. Rodriguez standing in the line of fire and intentionally shot Ms. Rodriguez to neutralize a perceived threat from Danny. Additionally, Ms. Rodriguez has presented evidence that Defendant Chavez was not properly trained on the departmental consequences for the improper use of deadly force. There are numerous lawsuits concerning the use of force against the Fresno Police Department, including a criminal indictment by a federal agency, and Defendant Chavez could not even describe the type of training he received on the use of force a mere 30 days before the incident. All of the above facts point to a culture of tolerance surrounding the use of excessive force and the failure to properly train its officers by the City of Fresno. Accordingly, the Court should deny Defendants' Motion for Summary Judgment in its entirety.

Date: February 14, 2011

  /s/ Michael Bracamontes, Esq.
Michael Bracamontes, Esq.
BRACAMONTES & VLASAK, P.C.
Attorneys for Plaintiff Gabrielle Rodriguez

*Rodriguez v. City of Fresno, et al. – Plaintiff's Opposition to Defendants' Motion for Summary Judgment*
*1:09-CV-01176-AWI-MJS*

Bracamontes & Vlasak
A Professional Law Corporation
www.bvlawsf.com