1
2
3
4
5
6
7       **IN THE UNITED STATES DISTRICT COURT FOR THE**
8               **EASTERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| **GABRIELLE RODRIGUEZ,** ) | **CV F 09- CV - 1176 AWI MJS** |
| ) | |
| **Plaintiff**, ) | |
| ) | **MEMORANDUM OPINION** |
| **v.** ) | **AND ORDER ON** |
| ) | **DEFENDANTS' MOTION FOR** |
| **CITY OF FRESNO, JERRY DYER** ) | **SUMMARY JUDGMENT OR** |
| **ROBERT CHAVEZ, and DOES 1 to 20,** ) | **SUMMARY ADJUDICATION** |
| **inclusive,** ) | |
| ) | **Document # 80** |
| **Defendants.** ) | |
| _____ ) | |

        In this action, plaintiff Gabrielle Rodriguez ("Plaintiff") alleges civil rights violations

under federal and state law against defendants City of Fresno, Jerry Dyer and Robert Chavez

("Chavez") (collectively, "Defendants") based on injuries she sustained as a bystander during

a police response to an incident at her home in the City of Fresno.  Plaintiff's complaint

alleges federal and state civil rights claims against both the individual and municipal

Defendants and alleges a variety of state common law claims against both as well.  In the

instant motion, Defendants move for summary judgment on all claims against them.  Federal

question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

        **FACTUAL OVERVIEW AND PROCEDURAL HISTORY**

        Plaintiff's complaint was filed on July 2, 2009. The complaint alleges eight claims for

relief.  The first alleges violation of Plaintiff rights under the Fourth and Fourteenth Amendments in violation of 28 U.S.C. § 1983 against Defendant Chavez.  Plaintiff's second claim for relief alleges <u>Monell</u> claims against Defendants Dyer and City of Fresno.  Plaintiff's third and fourth claims for relief allege negligence and battery claims respectively against Defendants Chavez and City of Fresno.  Plaintiff's fifth claim for relief alleges unlawful use of violence based on race or gender in violation of California Civil Code section 51.7 against Defendants Chavez and City of Fresno.  Plaintiff's sixth claim for relief alleges violation of California Civil Code, section 52.1 against all Defendants.  Plaintiff's seventh claim for relief alleges negligent hiring, training and supervision against Defendants Dyer and City of Fresno and Plaintiff's eighth claim alleges vicarious liability under state law against City of Fresno.

The only motions to come before the court from the time the complaint was filed to the time the instant motion for summary judgment was filed involved Plaintiff's motion to compel disclosure of certain information pertaining to internal affairs proceedings involving instances of police use of lethal force.  The Magistrate Judge granted Plaintiff's motion to compel on September 1, 2010.  Defendants moved for reconsideration of the Magistrate Judge's order on September 15, 2010, and this court filed an order on December 6, 2010, denying reconsideration of the order to compel.

As the court noted in its order denying reconsideration, the two sides in this case allege very sharply divergent factual backgrounds.  Defendants allege the police dispatched Officers Chavez and Derek Avila ("Avila") to an apartment in Fresno where Plaintiff resided with her boyfriend, Danny Hernandez ("Hernandez").  The parties agree that a domestic disturbance was reported at a New Year's Eve party and that there was loud shouting and arguing.  The parties agree that Marcelino Rodriguez ("Marcelino"), (who is not related to Plaintiff) gave a description of Hernandez to police.  Defendants allege Hernandez was described by Marcelino as a Bulldog gang member who was armed with a handgun. Defendants allege Marcelino indicated that Hernandez had threatened to kill Marcelino's brother, Michael Rodriguez, and had brandished a handgun in Marcelino's presence and that Hernandez kept the handgun tucked into his front waistband . Defendants allege the police

Officers approached the apartment, observed Hernandez walking away from the apartment and identified themselves to him as police officers.  Defendants allege Hernandez turned and ran into the apartment, but that as he was running, his hands shifted to the area around his front waistband where the handgun was reportedly located.  Hernandez fled into the apartment and was pursued by the police officers.  When Chavez reached the inside of the apartment he saw Hernandez moving toward an open doorway in the kitchen/livingroom area of the apartment.  Defendants allege Plaintiff was standing to the side of where Hernandez was and was not in Officer Chavez's "sight picture."  Chavez, fearing that Hernandez posed a deadly threat, fired two shots in rapid succession.  At about the same time he fired Plaintiff reached out and grabbed Hernandez's shoulder.  Danny Hernandez was struck by one shot in the back and Plaintiff was struck by one shot in the vaginal area.  Defendants contend the shooting of Plaintiff was accidental.

Plaintiff, on the other hand, alleges Hernandez was not a gang member, did not threaten anyone, did not own a gun, and was unarmed at the time Chavez fired the shots that wounded Hernandez and Plaintiff.  Plaintiff alleges the officers did not identify themselves as being police officers and that Hernandez fled from what he believed were gang members.  Plaintiff alleges that Hernandez never looked at the officers and never moved as though he was reaching for a gun at his waist before he was shot.  Plaintiff alleges that she was in Chavez's "sight picture" when Chavez fired and that Chavez intentionally shot her out of an unreasonable fear that Hernandez posed a lethal threat.

The instant motion for summary judgment was filed on January 14, 2011.  Plaintiff's opposition was filed on February 14, 2011, and Defendants' reply was filed on February 18, 2011.  The hearing on motion, which was scheduled for February 28, 2011, was vacated and the matter was taken under submission as of that date.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

3

Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474

4

1  F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in

2  contention is material, i.e., a fact that might affect the outcome of the suit under the

3  governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

4  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute

5  is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

6  nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d

7  1433, 1436 (9th Cir. 1987).

8        In the endeavor to establish the existence of a factual dispute, the opposing party need

9  not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at

12  631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

13  proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

14  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

15  Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

16        In resolving the summary judgment motion, the court examines the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18  any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06

19  (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

20  255, and all reasonable inferences that may be drawn from the facts placed before the court

21  must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United

22  States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of

23  Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the

24  air, and it is the opposing party's obligation to produce a factual predicate from which the

25  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

26  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

27

28

1

**DISCUSSION**

2

**I. Plaintiff's Fourth Amendment Claim Against Chavez**

3

The complaint alleges Plaintiff suffered a depravation of rights secured by the Fourth

4

Amendment and/or by the Fourteenth Amendment when she was incidentally[1] shot by

5

Chavez. Defendants' central contention with regard to the liability of individual Defendant

6

Chavez under section 1983 is that Plaintiff cannot claim a violation of Fourth Amendment

7

because there was no "seizure" for Fourth Amendment purposes. As an initial matter, the

8

court notes the facts of this case are sharply and nearly universally disputed. That said, the

9

court finds that it may be useful to explore cases that help define the boundaries between

10

what is and is not a seizure for Fourth Amendment purposes to determine whether and under

11

what factual circumstances Plaintiff could claim a violation of her Fourth Amendment rights.

12

"A Fourth Amendment seizure occurs whenever 'there is a governmental termination

13

of freedom of movement *through means intentionally applied*.' [Citation.]" <u>Vathekan v.</u>

14

<u>Prince George's County</u>, 154 F.3d 173, 178 (4th Cir. 1998) (quoting <u>Brower v. County of</u>

15

<u>Inyo</u>, 489 U.S. 593, 597 (1989) (emphasis in original)). Whether a Fourth Amendment

16

seizure has occurred is central to the determination of liability arising from police-applied

17

force. "*All* claims that law enforcement officers have used excessive force – deadly or not –

18

in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

19

analyzed under the Fourth Amendment and its 'reasonableness' standard." <u>Graham v.</u>

20

<u>Connor</u>, 490 U.S. 386, 395 (1989) (emphasis in original). However, where no seizure has

21

occurred in an excessive force claim, the claim falls outside the Fourth Amendment and its

22

"reasonableness standard" but comes instead within the ambit of the substantive due process

23

component of the Fourteenth Amendment. <u>See</u> <u>U.S. v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997)

24

(due process component of Fourteenth Amendment is implicated where the right infringed is

25

26

27

28

---

[1] The court uses the terms "incidental" or "incidentally" throughout to incorporate both Defendants' contention that the shooting was "accidental" and Plaintiff's contention that Chavez shot Plaintiff "deliberately" albeit for the purpose of effectuating the seizure of Danny Hernandez. Thus, the court's use of the terms is intended to indicate no prejudice toward either party's contentions regarding Chavez's actions.

not covered by another amendment). The "substantive component of the due process clause insulates citizens against the arbitrary exercise of government power." Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000). Under the due process clause of the Fourteenth Amendment, liability is found only if the plaintiff can show that police conduct "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998).

"A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is governmental termination of freedom of movement *through means intentionally applied*. Brower v. County of Inyo, 489 U.S. 596-597 (1989). The rule that emerges from case authority from other circuits is that a person can only be seized for Fourth Amendment purposes if that person was the "deliberate object" of the exertion of force intended to terminate freedom of movement. Caminillo v. Streicher, 434 F.3d 461, 465 (6th Cir. 2006).

A number of cases illustrate the circumstances that will not support a Fourth Amendment claim by an incidental victim of police action. A plaintiff that is injured collaterally or incidentally to the application of force by police against a third party cannot maintain a Fourth Amendment claim. See Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000) (Forth Amendment claims for injuries inadvertently inflicted upon an innocent third party not available where police used force in trying to seize a perpetrator because police could not "'seize' any person other than the one who was a deliberate object of their exertion of force"). In particular, an individual who is accidentally shot by police who are attempting to apprehend someone else cannot maintain a Fourth Amendment claim. Id. Likewise, residents of a house whose movements are restrained while police search for a third party are not "seized" for fourth Amendment purposes. Ewolski v. City of Brunswick, 287 F.3d 492, 507 (6th Cir. 2002). In a similar vein, when police deploy a device to cause automobile tires to deflate in an effort to stop a fleeing suspect, the injuries caused when the same device inadvertently causes loss of control in a car that is not occupied by the subject

7

suspect are not redressable under the Fourth Amendment because cars not occupied by the object of the police actions are not seized. Bublitz v. Cottey, 327 F.3d 485, 489 (7th Cir. 2003).

On the other hand, the following cases illustrate situation where an innocent victim has been held to be the object of police application of force who may assert a Fourth Amendment Claim. In Vathekan, 154 F.3d at 173, and in Garcia v. City of Sacramento, 2010 WL 3521954 (E.D. Cal. 2010), the deployment of a police dog into a building for the purpose of seizing a suspect was held to constitute a seizure under the Fourth Amendment where the dog bit bystanders who were not the object of the police action. In both cases, the courts reasoned that when officers intentionally deploy a dog, which is incapable of discriminating suspects from bystanders and is trained to bite whoever it encounters, the officers effectively intend to seize anyone in the space where the dog was deployed. See Vathekan, 154 F.3d at 178-179; Garcia, 2010 WL 3521954 at *2. In a similar vein, this court held that, where a plaintiff was injured by a pepperspray bullet fired into a general area for the purpose of subduing all the individuals in that area, the injured plaintiff was seized for Fourth Amendment purposes. Nelson v. City of Davis, 709 F.Supp.2d 978, 987 (E.D. Cal. 2010). In Nelson, the court held that where the plaintiff "was in a group intentionally targeted" by police with pepperspray launchers, the court could not conclude for summary judgment purposes that there had not been any seizure. Id.

Defendants note that there is no Ninth Circuit authority that directly addresses whether liability arising from the incidental shooting of a person who is not the object of police action should be analyzed under Fourth or Fourteenth Amendment standards. Plaintiff does not directly confront the issue of whether an incidental shooting of a bystander during the legitimate application of police force should be analyzed under the Fourth Amendment standard. Rather, she contends that Chavez shot her "intentionally" and that the shooting of herself or of Danny Hernandez was unreasonable under the circumstances.

In her Statement of Additional Disputed Facts ("ADF"), Plaintiff repeats responses from Chavez's deposition that reflect Chavez's assessment that Plaintiff was not in his "sight

8

picture" and only was struck by one of the shots because she reached out and pulled herself into the way.  ADF ¶¶ 53-55.  Plaintiff also cites Chavez's statements that Plaintiff was "an innocent person" and that she "did not pose a threat.  ADF ¶¶ 57-58.  Plaintiff's assertion that Chavez intentionally shot her is expressed in her response to Defendants' proffered undisputed material fact ("UMF") # 47, which states "Officer Chavez did not intend to shoot the [Plaintiff]."  Defendants' UMF # 47 is disputed by Plaintiff who states "Chavez saw [Plaintiff] and intentionally shot her in order to neutralize a perceived and imaginary threat from Danny."  Plaintiff offers as proof to substantiate her opposition to Defendants' UMF # 47 the statements from the Chavez deposition that are noted above and the following from her own declaration:

> Based on my proximity, position and physical contact with Danny Hernandez, I have a reasonable belief that Defendant Chavez intended to shoot me. Without provocation, Defendant Chavez intentionally fired two rounds and shot Danny and I.

Rodriguez Dec. at ¶ 5.

The word "intentional," as used by Plaintiff to describe Chavez's actions in shooting her, requires additional specification in order to support Plaintiff's contention that she was seized for Fourth Amendment purposes.  Chavez's actions were "intentional" only in the sense that Chavez volitionally drew his side arm, aimed at what he thought was Hernandez, and volitionally pulled the trigger.  However, under the case authority cited above, such volitional action is not sufficient.  In order to show that Chavez's gunshot was force "intentionally applied" to Plaintiff within the meaning of Brower, Plaintiff must show that (1) Chavez had the subjective intent to shoot Plaintiff for the purpose of effecting her seizure, or (2) Chavez understood when he shot that the bullet would indiscriminately hit anyone in the area (Vathekan and other dog-bite cases), or (3) Chavez subjectively intended to seize anyone in the vicinity and was indifferent as to who the bullet actually struck (Nelson and other pepperspray cases).

The court finds that Plaintiff's use of the word "intentional" is conclusory in light of the facts proffered in this case.  There is nothing in the facts alleged by Plaintiff that

9

significantly differentiate this case from other cases involving an innocent bystander struck by police fire that is targeted at a third person.  See Claybrook, 190 F.3d at 359 (Fourth Amendment standard does not apply where innocent third-party bystander wounded by police fire in shoot-out).  Basically, Plaintiff has recognized that Chavez's actions were focused on Hernandez and that Chavez had no reason, expressed or conjectural, to seek to restrain Plaintiff.  For purposes of determining whether Plaintiff was seized for Fourth Amendment purposes, it does not matter whether Hernandez was armed, whether he was a gang member, whether he was turning to look at Chavez, whether he was fleeing or whether the shooting of Hernandez was reasonable; the critical point is that Chavez's intent was focused on Hernandez, not on Plaintiff.

The court finds that Plaintiff was an innocent bystander as that term was used in Claybrook.  Plaintiff was therefore not seized within the meaning of the Fourth Amendment. Therefore, any constitutional claim Plaintiff may have with respect to Chavez is pursuant to the substantive component of the due process clause of the Fourteenth Amendment, if at all.

## II.  Plaintiff's Fourteenth Amendment Claim Against Chavez

> Fundamentally, the substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power. [. . . .] Accordingly, conduct of a law enforcement officer towards a citizen which "shocks the conscience" denies the victim fundamental substantive due process. [. . . .] In situations wherein the implicated state, county, or municipal agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action (such as, for example, most occasions whereby corrections officials ignore an inmate's serious medical needs), their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" toward the plaintiff's federally protected rights. [. . . .] In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation (such as, for example, a prison riot), public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline[.]"

Claybrook, 199 F.3d at 359 (internal citations to County of Sacramento v. Lewis, 523 U.S. 833 (1998) omitted).  In this circuit, the phrase "maliciously and sadistically for the very purpose of causing harm" is often restated as requiring that the plaintiff show that the officer "acted with a purpose to harm [the plaintiff] for reasons unrelated to legitimate law

1  enforcement objectives." <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir,. 2008).

2     ***A. Constitutional Violation***

3        Plaintiff argues that there remains issues of material fact as to whether Chavez's

4  shooting of her and Hernandez shocks the conscience.  According to Plaintiff's account of the

5  facts: (1) neither Chavez nor Avila identified themselves as police officers (ADF # 7); (2)

6  Hernandez was not armed at the time he encountered the police officers (ADF # 11); (3) the

7  officers had ample opportunity to view Hernandez's front as he approached the officers and

8  to view his back as he ran away from the officers; (4) the officers never saw a firearm in

9  Hernandez's possession prior to the time Chavez fired two shots (ADF ## 31-34); (5) at no

10  time did Hernandez reach toward his belt area or look back to "get a sight picture" on Chavez

11  (ADF # 44).

12        Marcelino Rodriguez, is the brother of Michael Rodriguez.  They were both at the

13  party and neither are related to Plaintiff.  It is not disputed that Marcelino Rodriguez called

14  police on the night of the party and reported that Danny Hernandez was a Bulldog gang

15  member, that he was armed and had brandished a pistol in Marcelino's presence, that Danny

16  Hernandez had gotten into an argument with Michael Rodriguez and that Danny had

17  threatened to kill Michael.  (UMF #'s 10-13).  While Plaintiff disputes the underlying

18  factuality of all of the statements made by Marcelino to the police, it is not disputed that

19  Marcelino did place the call to police and relate the foregoing "facts" to them.  Consequently,

20  it cannot be disputed that by the time Chavez and Avila arrived at the residence, they had a

21  description of Hernandez (UMF # 16), and had been informed, and therefore had reason to

22  believe, that Hernandez was likely armed, a gang member and that he had threatened at least

23  one person at the party.  It is also not disputed that Chavez and Avila ran a computer check

24  using Hernandez's name and birthdate and received information indicating that a person

25  having that name and birthdate had "extensive police contacts, including weapons charges

26  and violation of Penal Code § 148 [resisting or obstruction of a police officer]; and had

27  tattoos that were Bulldog gang related."  UMF # 17.

28        Defendants allege that "[m]aking the decision regarding whether to confront the

1    subject (Hernandez)occurred in split seconds.  UMF # 28.  Plaintiff objects, stating that at

2    least one minute elapsed between the time Hernandez walked out of the house to the time he

3    was confronted by Chavez.  While Defendants' assessment of the evolving nature of the

4    situation may be slightly hyperbolic, it is clear that the nature of the situation Chavez and

5    Avila confronted was closer to a "rapidly evolving, fluid, and dangerous predicament" than to

6    a situation that would have allowed "the luxury of calm and reflective pre-response

7    deliberation."  Claybrook, 199 F.3d at 359; see Porter, 546 F.3d at 1139-1140 (situation that

8    evolved of a period of one or two minutes demanded "purpose to harm standard of

9    culpability').  Thus as between employing a "deliberate indifference" standard or a standard

10   requiring the demonstration of force "maliciously and sadistically [applied] for the very

11   purpose of causing harm;" the court finds that the latter standard is appropriate to apply in

12   this case under Claybrook and Porter.

13          Additionally, in analyzing the facts presented, it is important that the court maintain

14   its focus on Chavez's actions with regard to Plaintiff; not his actions with regard to

15   Hernandez.  See id. at 360 (test is whether officer's actions with regard to innocent bystander

16   who was inadvertently shot were "malicious or sadistic").  Plaintiff relies on F.C. v. County

17   of Los Angeles, 2010 WL 5157339 (2010 C.D. Cal), in part for the proposition that the

18   court's determination of whether there is a Fourteenth Amendment substantive due process

19   violation turns on the reasonableness of police actions toward their intended target rather than

20   toward the innocent bystander.  F.C. is distinguishable from the instant case because F.C. was

21   essentially a wrongful death action brought by the decedent's survivors whose Fourteenth

22   Amendment liberty interest claim rested on whether the police used reasonable force with

23   regard to the decedent.  Id. at *5.  To the extent it is Plaintiff's contention that she suffered a

24   depravation of rights under the substantive due process provisions of the Fourteenth

25   Amendment if she can show that police actions with regard to Hernandez were unreasonable,

26   the court disagrees; the question is whether Chavez's actions with regard to Plaintiff were

27   "malicious or sadistic" or for the purpose of causing harm unrelated to any legitimate law

28   enforcement interest.

1       The court concludes that no reasonable trier of fact could find that Chavez acted

2  toward Plaintiff with malice or for the purpose of causing harm unrelated to any legitimate

3  law enforcement interest.  At the point Chavez contacted Hernandez, Chavez had reason to

4  believe that Hernandez was armed, dangerous, and a threat to at least one other person in

5  attendance at the party.  Thus, Chavez's pursuit of Hernandez into the residence and his

6  subsequent discharge of his firearm at Hernandez was not without legitimate law

7  enforcement purpose or interest.  Plaintiff cites F.C. for the proposition that summary

8  judgment should not be granted where, as here, a substantial amount of what actually

9  happened remains in controversy.  The court finds that the court's analysis in F.C. does not

10  control in this case.  Unlike the case in F.C., Plaintiff here has alleged no facts that, if proven,

11  would tend to show that Chavez acted toward her with malicious or sadistic intent or for the

12  purpose of causing harm to her.  There is no real dispute that Plaintiff was wounded

13  incidentally, whether or not Chavez discharged his weapon intentionally.  The existence of

14  facts in dispute does not preclude summary judgment for Defendants if facts not in dispute

15  are sufficient to show that no constitutional injury occurred.  See Wilkenson v. Torres, 610

16  F.3d 546, 551 (9 Cir. 2010) (dispute over facts peripheral to justification for police shooting

17  not sufficient to deny summary judgment where other established facts were sufficient to

18  justify shooting).

19      Defendants are therefore entitled to summary judgment as to Plaintiff's first claim for

20  relief against Chavez for violation of constitutionally guaranteed rights under 42 U.S.C. §

21  1983.

22       ***B.  Qualified Immunity***

23      To determine whether qualified immunity applies, the threshold question is whether,

24  in the light most favorable to the party asserting injury, the facts show an officer's conduct

25  violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Robinson v.

26  Solano County, 278 F.3d 1007, 1012 (9th Cir. 2002) (en banc).  If no constitutional right was

27  violated, immunity attaches and the inquiry ends.  Saucier, 533 U.S. at 201.  If a

28  constitutional right  would have been violated were a plaintiff's allegations established, the

next step is to ask whether the right was clearly established in light of the context of the case. Id. Finally, the contours of the right must be clear enough that a reasonable officer would understand whether this or her acts violate that right. Id. at 202.

The court has conducted an analysis of Plaintiff's Fourth and Fourteenth Amendment claims against Chavez and has concluded that there was no constitutional violation. Chavez is therefore entitled to qualified immunity as to the Plaintiff's constitutional claims against him.

The court concludes that Defendant Chavez is entitled to summary judgment as to Plaintiff's first claim for relief.

## III. Entity Liability Under 42 U.S.C. § 1983

"A municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. [Citations.]" Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002). A municipal entity is liable under section 1983 only for the actions of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978). "[T]o impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation." Sepatis, 217 F.Supp.2d at 1005 (citing Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

> [N]either Monell[. . .], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the [finder of fact] has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("Heller"). Although it appears to be the case in this circuit that a municipal entity may be liable under Monell where the offending officer is not liable solely because of qualified immunity, Sunn v. City and County

14

of Honolulu, 852 F.Supp. 903, 907 (D. Hawaii 1994), the facts of this case do not constitute an exception to Heller.  Although the court has found that qualified immunity attaches under the language of Saucier, the underlying reason is that there was no constitutional injury. Sunn and similar cases only permit entity liability under Monell where there was a constitutional injury but the individual officer is entitled to qualified immunity because the right that was violated was not clearly established at the time.  Where, as here, there was no violation of any constitutional right, Heller applies.  Defendant City of Fresno is not liable under section 1983.  Summary judgment is therefore proper as to Plaintiff's second claim for relief.

**IV.  Negligence**

The parties agree that a police officer has the obligation "to use reasonable care in deciding to use and in fact using deadly force."  Munoz v. City of Union City, 120 Cal.App.4th 1077, 1101 (2004).  In addition, there is agreement that a claim of negligence in connection with the application of force by police personnel requires a showing of (1) a legal duty to use reasonable care, (2) a breach of that duty (3) proximate causation, and (4) injury to the plaintiff.  Phillips v. TLC Plumbing, 172 Cal.App.4th 1133, 1139 (2009).

Defendants contend that they are entitled to summary judgment because there is no issue of material fact as to whether Chavez used reasonable care in deciding to use deadly force.  As noted previously, the crucial facts that go to whether reasonable care was used are each disputed.  Defendants contend that Hernandez was armed, was carrying a gun in his waistband, that he put his hand or hands to his waistband as he was running away and that he turned partially to get a "sight picture" on Chavez.  Plaintiff contends that Hernandez was not armed, that Chavez had sufficient opportunity to view Hernandez from the front as he was approaching and from the back as he ran away and that Chavez never saw a gun and had adequate time and opportunity to determine that Hernandez was unarmed.  Plaintiff also alleges Hernandez never reached toward his waist and never turned around to see who was chasing him.  Both sets of facts are supported by statements or depositions by Chavez and Hernandez, respectively.

15

1    In assessing the propriety of summary judgment, the court must credit all inferences

2    supported by the non-moving party's evidence.  Blankenhorn v. City of Orange, 485 F.3d

3    463, 470 (9th Cir. 2007) (citing Anderson, 477 U.S. at 250).  With that in mind, the question

4    becomes whether a reasonable trier of fact could find for the plaintiff in a situation where a

5    police officer shot at a fleeing suspect where observation would have informed the reasonable

6    officer that the suspect was unarmed and where the suspect did not reach for the area where a

7    gun might have been secreted or turn around to view the officer.  Based on the facts asserted

8    by Plaintiff, the court would have to accept a verdict for the plaintiff if such facts were shown

9    at trial.  Summary judgment on Plaintiff's claim for negligence is therefore not appropriate.

10    In light of the fact the court has found there was no evidence of constitutional harm, it

11   bears noting that absence of a constitutional harm does not equate to the absence of liability

12   under state tort law.  See Bublitz v. Cottey, 327 F.3d 485, 489-490 (7th Cir. 2003).  An

13   officer's actions may be unreasonable, negligent or in violation of departmental policy

14   without necessarily rising to the level of constitutional abridgment under the Fourteenth

15   Amendment.  See Claybrook, 199 F.3d at 360 (police action does not shock the conscience

16   even if negligent and in violation of department policy).  Crediting Plaintiff's evidence as it

17   must, the court finds Plaintiff has presented evidence to support facts that, if proven, would

18   show police officer conduct that can be held negligent.  Summary judgment as to Plaintiff's

19   third claim for relief is therefore not appropriate.

20   **V.  Battery**

21    "The elements of civil battery are: (1) defendant intentionally performed an act that

22   resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not

23   consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or

24   harm to plaintiff."  Brown v. Ransweiler, 171 Cal.App.4th 516, 526-527 (4th Dist. 2009)

25   (citing Piedra v. Dugan, 123 Cal.App.4th 1483, 1495 (2004)).  Because a police officer is

26   "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on

27   grounds of battery resulting from police action must prove that "the police officer's use of

28   force was unreasonable."  Id. at 527.  Plaintiff asserts two theories under which she contends

16

a jury could find civil battery had occurred.  First, Plaintiff alleges evidence exists from which a reasonable jury could infer that Chavez saw Plaintiff in the line of fire but intentionally shot through her in order to "neutralized the perceived threat presented by Danny [Hernandez]."  Plaintiff also contends that Chavez can be held liable on a claim of battery under the doctrine of transferred intent.  "Under the doctrine of transferred intent, a defendant 'who unlawfully aims at one ... and hits another ... is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act.' [Citation.]" Bailey v. County of San Joaquin, 671 F.Supp.2d 1167, 1175 (E.D. Cal. 2009) (quoting Singer v. Marx, 144 Cal.App.2d 637, 643 (1956)).

Under the doctrine of transferred intent, the viability of a claim of battery by a bystander against a police officer turns on the reasonability of the application of force by the police officer against the intended suspect.  See Brown, 171 Cal.App.4th at 527 n.10 (under transferred intent doctrine, if police officer's actions are reasonable as to the suspect, then they are necessarily reasonable as to the third-party plaintiff).  As the court noted above, in the presence of conflicting evidence, the court cannot find that Chavez's decision to employ deadly force against Hernandez was reasonable as a matter of law.  Although the court can find no evidence that affirmatively indicates Chavez targeted Plaintiff in order to shoot Hernandez, the court may not find for Defendants on Plaintiff's battery claim because the court cannot rule out the possibility that a jury could find that Chavez unreasonably used lethal force against Hernandez.  Summary judgment as to Plaintiff's claim for battery is therefore not warranted.

**VI. Claims Under California Civil Code sections 51.7 and 52.1**

Plaintiff offers no opposition to Defendants's motion for summary judgment as to her claims under California Civil Code sections 51.7 and 52.1.  California Code section 51.7 ("Unruh Act") establishes the right of individuals "to be free of violence, committed against their persons or property" on account of their political affiliation, or on account of their race, sex, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation.  Defendant is entitled to summary judgment as to Plaintiff's claim

17

pursuant to section 51.7 because Plaintiff has alleged absolutely no evidence from which a jury could find that the harm she suffered was the result of violence committed on account of her race or gender or on account of any of the other listed categories.  Although the complaint alleges in conclusory manner that Plaintiff was subjected to unreasonable force because of her "race and/or gender," there are absolutely no facts to substantiate this claim.  Summary judgment as to Plaintiff's claim pursuant to California Civil Code section 51.7 is therefore appropriate.

In a similar vein, California Civil Code section 52.1 (the "Bane Act") provides a cause of action in equity and statutory civil penalty for interference "by threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(a).  The action may be brought by the Attorney General or any District Attorney, section 52.1(a), or by the individual suffering the intimidation or coercion. § 52.1(b).  "Civil Code section 52.1 does not extent to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."  Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (2004).

The text of the Bane Act and such case authority as the court can find indicates that a cause of action under the act requires a predicate – the application of threat, intimidation or coercion – and an object – interference with a constitutional or statutory right.  The question that arises in a case such as this is whether the application of coercive force in the form of the incidental injury of a bystander can be both the predicate and the object thereby satisfying the elements of a cause of action under the Bane Act.  There seems to be a paucity of case authority covering this subject.  In Jones v. K-Mart Corp., 17 Cal.4th 329 (1998) the plaintiff, an African-American, was forceably detained and searched by store security personnel (not police officers) on suspicion of shoplifting.  The Plaintiff prevailed at trial on state tort claims of "false imprisonment, battery."  The plaintiff also prevailed on a claim under the Bane Act that alleged an interference with the plaintiff's Fourth Amendment rights 'by using excessive

18

force against him . . . .'" <u>Id.</u> at 332.  The jury was instructed that the constitutional

interference claim – that is, the plaintiff's Bane Act claim –  was predicated solely on the

violation of the plaintiff's rights under the Fourth Amendment of the U.S. Constitution or

under Article I section 13 of the California Constitution.  The defendants appealed the jury's

verdict as to the plaintiff's Bane Act claim only.  The California Supreme Court upheld the

appellate court's decision reversing the jury verdict as to the Bane Act claim on the ground

that a state action is a necessary predicate to violation of either the United States or the

California State Constitutions, and there was no evidence of state action at all.  Consequently,

the plaintiff was not entitled to a jury instruction where there was no evidence of state action.

<u>Id.</u> at 333-334.  What the <u>Jones</u> court did *not* do is hold the error in the jury instruction

harmless on the ground that the jury's verdicts finding false imprisonment and battery

satisfied the elements of a Bane Act claim in the absence of a constitutional or statutory

violation.

        Based on the decision in <u>Jones</u> and on the quoted comment in <u>Venegas</u>, this court

concludes that in order to maintain a claim under the Bane Act, the coercive force applied

against a plaintiff must result in an interference with a separate constitutional or statutory

right.  It is not sufficient that the right interfered with is the right to be free of the force or

threat of force that was applied.  The court has found that Plaintiff in this case was not seized

and has not suffered a cognizable constitutional injury under either the Fourth or Fourteenth

Amendments.  Nor is there any claim of independent violation of a California constitutional

provision or a separate California statute.  The court therefore concludes that Defendants are

entitled to summary judgment as to Plaintiff's claim under California's Bane Act.

        The court therefore concludes that Defendants are entitled to summary judgment as to

Plaintiff's fifth and sixth claims for relief.

## VII.  State Law Claims for Negligent Hiring and Supervision and Vicarious Liability

        The court has addressed Defendants' motion for summary judgment as to all of

Plaintiff's claims that plausibly implicate federal constitutional and statutory rights and

claims.  As explained below, the court will exercise its discretion to decline to assert pendent

jurisdiction over Plaintiff's remaining claims.  The court has maintained supplemental

jurisdiction to the extent necessary to adjudicate Defendants' motion for summary judgment

as to those state common law and statutory claims that the court feels may have a substantial

relationship or tie-in to the federal statutory and constitutional claims.  Unlike Plaintiff's

claims for negligence and battery and her claims under the Unruh and Bane Acts, Plaintiff's

claims for negligent hiring and supervision and the claim for vicarious liability have no direct

or indirect tie-in to allegations of violation of federal constitutional or statutory rights and are

strictly matters of state law.  The court finds that dismissal of these claims without prejudice

is proper given the fact the court will decline to further assert supplemental jurisdiction over

Plaintiff's state law claims.

**VIII.  Supplemental Jurisdiction**

The court has "supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).

Section 1367 adopts the full constitutional limit of supplemental jurisdiction.  <u>Mendoza v.</u>

<u>Zirkle Fruit Co.</u> 301 F.3d 1163, 1172-73 (9th Cir. 2002);  <u>Baer v. First Options of Chicago,</u>

<u>Inc.</u>, 72 F3d 1294, 1299 (7th Cir. 1995).   As such, nonfederal claims are part of the same case

as federal claims when they "derive from a common nucleus of operative fact and are such

that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  <u>Finley</u>

<u>v. United States</u>, 490 U.S. 545, 549 (1989) (quoting <u>United Mine Workers of Am. v. Gibbs</u>,

383 U.S. 715, 725 (1966)).  Supplemental [or pendent] jurisdiction is a doctrine of discretion,

not of  right.  <u>City of Chicago v. Intern. College of Surgeons</u>, 522 U.S. 156, 172 (1997).  The

court may decline to exercise supplemental jurisdiction over a claim if--

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which
> the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original
> jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c)

1    [P]endant jurisdiction is a doctrine of discretion not of plaintiff's right.  Its

2    justification lies in considerations of judicial economy, convenience and fairness to the

3    litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over

4    state claims." United Mine Workers v. Gibbs, 383 U.S. 715, 726  (1966). Because ......, there

5    remains no independent basis for federal jurisdiction.  The court may decline to exercise

6    supplemental jurisdiction over state claims when the federal claims are dismissed before trial.

7    See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726.

8    As previously discussed, the court has determined the merits of Defendants' motion

9    for summary judgment as to Plaintiff's federal claims and those state claims that are in some

10   way predicated upon or related to federal constitutional or statutory rights.  What remains

11   after summary judgment in this case are state law claims that the court believes are best

12   adjudicated by a state court.  This court finds that the ends of efficient use of judicial

13   resources, as well as the interests of comity are best served if the court declines supplemental

14   jurisdiction and dismisses Plaintiff's remaining state law claims without prejudice.

15

16   THEREFORE, for the reasons discussed the court hereby ORDERS as follows:

17   1.   Defendants' motion for summary judgment as to Plaintiff's first claim for relief for

18        violation of Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42

19        U.S.C. § 1983 is hereby GRANTED.  The Clerk of the Court shall ENTER

20        JUDGMENT in favor of Defendants as to Plaintiff's First Claim for Relief.

21   2.   Defendant's motion for summary judgment as to Plaintiff's second claim for relief

22        against City of Fresno pursuant to Monell v. Dep't of Soc. Services, 436 U.S. 658

23        (1978) is hereby GRANTED.  The Clerk of the Court shall enter judgment in favor of

24        Defendants as to Plaintiff's second claim for relief.

25   3.   Defendants' motion for summary judgment as to Plaintiff's third claim for relief for

26        negligence under California common law is hereby DENIED.

27   4.   Defendants' motion for summary judgment as to Plaintiff's fourth claim for relief for

28        battery under California common law is hereby DENIED.

21

5. Defendants' motion for summary judgment as to Plaintiff's fourth claim for relief for violation of section 51.7 of the California Civil Code is GRANTED. The clerk of the court shall ENTER JUDGMENT in favor of Defendants as to Plaintiff's fourth claim for relief.

6. Defendants' fifth claim for relief for violation of section 52.1 of the California Civil Code is hereby GRANTED. The Clerk of the Court shall ENTER JUDGMENT in favor of Defendants' as to Plaintiff's fifth claim for relief.

7. Plaintiff's third, fourth, seventh and eighth claim for relief are hereby DISMISSED without prejudice. The Clerk of the Court shall CLOSE THE CASE.

IT IS SO ORDERED.

Dated:    May 14, 2011    _____

CHIEF UNITED STATES DISTRICT JUDGE

22